[ *280 ]     *CROSBY vs. HILLYER.

Where a *voluntary assignment* for the *benefit of creditors* was made by debtors. and the deed of assignment placed in the hand of the *assignee* who *hesitated to accept* for six hours, and then claimed the property, but before he concluded to accept, the property was levied upon by virtue of executions against the assignors, *it was held*, that the judgment creditors had obtained a *lien* upon the goods, and were entitled to have their debts satisfied in preference to the debts of the creditors provided for by the assignment.

ERROR from the superior court of the city of New-York. Crosby brought an action of *replevin* against Hillyer for a large quantity of merchandize levied upon by him as sheriff of the county of New-York, by virtue of two executions against John Hanna, Alpheus De Forrest and Henry O'Brien. The defendants in the executions had transacted business as merchants, under the name of *Hanna, De Forrest & Co.* The firm was dissolved in November, 1837. At the time of the dissolution, *O'Brien* transferred his interest in the partnership effects to *Hanna,* and committed to him and *De Forrest* the settlement of the partnership concerns. On the *twenty-second*

day of *December*, 1837, Hanna and De Forest executed a voluntary assignment of all their property to the plaintiff, *Charles Crosby*, and to *Robert G. Hanna*, for the *benefit of all their creditors*, giving a preference to two creditors, viz. *Elisha Powel*, *jun.* and *John N. Selby*. On the day preceding the execution of the assignment, the plaintiff, Crosby, was solicited by *James De Forrest*, the father of one of the assignors, to accept an assignment to himself and a *Dr. Dodge*, and he consented to do so ; and on the same day Crosby spoke to E. Powell, jun., who was the book-keeper and chief clerk of the firm of Hanna, De Forest & Co., to obtain his services in case he became an assignee, to which Powell assented. The assignment was executed on the *twenty-second* day of December, 1837, at *ten minutes before ten o'clock in the forenoon*, to Crosby and Robert G. Hanna, instead of to Crosby and Dr. Dodge; *neither of the assignees [ *281 ] being present. The assignment was handed to *James De Forrest* for the purpose of being delivered to the plaintiff, and it was *accordingly delivered* by him to the plaintiff *at ten o'clock A. M.* of the same day. James De Forrest observed to him, we have not got the name connected with you in the assignment which was contemplated ; to which the plaintiff answered that he must consider of it, that he was not satisfied with the individual with whom he was connected, and told De Forrest to call and he would give him an answer as to the acceptance of the assignment. At about *one o'clock P. M.* of the same day De Forrest called again upon the plaintiff, who said that he had not made up his mind whether he would accept or not, as he had not had time to inquire about Robert G. Hanna : he, however, retained the assignment in his possession. At *seven minutes after ten o'clock A. M.* of the *twenty-second* day of December, the executions under which the defendant justified were delivered to him, and at *five minutes after eleven o'clock* of the same day the property in question was levied upon, it then being in the store No. 66 Liberty-street, and the sheriff left an agent in charge of the goods. At *four o'clock P. M.* of the same day the plaintiff came to the store, claimed the goods as assignee, employed *Powell*, and put him in possession of the goods as far forth as he could under the circumstances. *Powell* and the *agent of the sheriff* retained a joint possession until the plaintiff sued out the writ of replevin in this cause, when the goods were delivered to the plaintiff, who has since remained in possession, acting as assignee under the assignment. On the *twenty-third* of December, 1837, *Robert G. Hanna*, by writing under seal, *relinquished* all interest in the assigned property to the plaintiff. The jury found a *special verdict* setting forth the above facts. They also found the value of the goods to be $3000, and in case the court should give judgment for the defendant, they assessed his damages at $3231,89. The court rendered judgment for the *defendant* for the sum assessed, together with the costs. Whereupon the plaintiff sued out a writ of error.

[ *282 ]   *E. P. Hurlbut, for the plaintiff in error, insisted that the deed of assignment was well executed as matter of fact, and that its actual execution by the assignors, and its delivery to a third person to convey to the assignee, *determined* or put an end to the title of the assignors in the property, 15 *Wendell*, 547 ; and the subsequent assent of the assignee perfected the title in him, although such assent was not fully expressed until after the levy under the executions.   He took by *relation* from the delivery of the deed to *James De Forest, Viner's Abr. tit. Relation*, 290 ; 3 *Cowen*, 75 ; *Co. Litt.* 48, *b.* ; 2 *Ventr.* 198 ; and *Wilt* v. *Franklin*, 1 *Binn.* 502, a case directly in point, where the assent of the assignee was not given until two days after a levy under an execution.   *See also* 1 *Show. Parl. Cas.* 150.   Here the assent of the assignee previous to the levy should be presumed.   He had been solicited to act as trustee, and had consented to do so ; he made arrangements with an agent to take charge of the property ; when the deed of assignment was delivered to him, he took it, and retained it in his possession until he concluded to act ; he did not refuse to accept the assignment, but only hesitated until he could make certain inquiries, and then, even before his co-trustee relinquished his interest, he asserted his title under the assignment.   Not having notified the assignors of his dissent, he must be deemed to have accepted the trust.   2 *Ventr.* 198.   1 *R. S.* 731, § 142, 2d ed.   1 *Sumner*, 537.   2 *Kent's Comm.* 533, *n. a.* 3d ed.   But if neither of the trustees accepted, the estate vested in both for the benefit of the *cestuis que trust*, and will be enforced in equity.   3 *Paige's R.* 420. 5 *id.* 46.   13 *Johns. R.* 314.   3 *Co. Litt.* 290, *b*, § 4.   11 *Wendell*, 248. 2 *Kent's Comm.* 533 *n. a.*   4 *Johns. Ch. R.* 529.   2 *Gallison*, 557. The assignment was made with the knowledge of *Crosby*, one of the assignees, and of *Powell*, one of the creditors.   After the delivery of the deed of assignment to *Crosby*, the assignors could not have made a valid second assignment ; and if they could not have done so, the defendant is not protected by the executions   An actual delivery to the assignee was not necessary ; it was enough that the deed was placed in the hands of [ *283 ]   a third *person to be delivered to him.   1 *Johns. Ch. R.* 240. 2 *Dyer*, 167, *b.*   12 *Johns. R.* 446.   1 *Salkeld*, 301.   3 *Co.* 27, *a*.   It was not necessary the *assignee* should execute the assignment, 1 *Edward's Ch. R.* 261, nor that the *creditors* should expressly consent to the assignment.   4 *Johns. Ch. R.* 248.   Under the revised statutes an assignment to trustees operates as a grant, and does not require any express consideration.   11 *Wendell*, 248.   *See also* 9 *Serg. & Rawle*, 224 ; 2 *Conn. R.* 633.

J. *Miller & D. Lord, jun.*, for the defendant, placed the defence upon

two grounds : 1. That the assignment was fraudulent *in law*, it not being accompanied by an immediate delivery, and an actual and continued change of possession of the property assigned : relying upon 2 *Wendell*, 446 ; 17 *id*. 53, and 19 *id*. 181 ; and 2. That the assignment did not become a valid and effectual instrument in the hands of the plaintiff, so as to *vest* the property in him previous to the *levy* by the defendant. The defendant, or rather the *judgment creditors* are entitled to all the protection and advantage that a *bona fide* purchaser could claim at the time of the levy. There was no actual delivery at the time the assignors affixed their hands and seals to the instrument, nor was there a delivery when it was put into the hands of their agent to take to the plaintiff. The right of the assignors to dispose of the property did not *determine* or cease until *Crosby* actually consented to accept the assignment. If, after making inquiries as to his co-assignee, he had ultimately refused to accept the trust, the assignment would have been of no validity. 1 *Edwards' Ch. R.* 261. Whilst he kept it without consenting to accept the trust, it was a dead letter, and the assignors might have revoked it. Assent could not be presumed from silence, or from previous understanding between the parties, because he spoke and declined the trust for the reason that a person other than the one contemplated was associated with him. Until he did accept, the assignors might dispose of the property, and the assignment could not affect judgment creditors or prevent them from obtaining a lien by an actual levy. In a case like this, there can be no valid delivery *without acceptance*, *actual or presumed. 1    [ *284 ] *Johns. Cas.* 116. 20 *Johns. R.* 184. 2 *Wendell*, 317. Until acceptance, the title was not in *Crosby ;* had he utterly refused, the assignment would have been a nullity. In whom, then, was the title ? Surely in no other than the assignors. The repeated applications to Crosby show that they did not intend the instrument should take effect unless he accepted the trust.

The authorities referred to by the counsel for the plaintiff establish the doctrine of *relation*, as between a grantor and grantee, or their representatives, but do not apply when the rights of third persons intervene. *Per Sutherland, J. in Jackson* v. *McMichael,* 3 *Cowen,* 75. *See also Frost* v. *Beekman,* 1 *Johns. Ch. R.* 297 ; *Viner's Abr. tit. Relation, p.* 288 ; 3 *Rep.* 29 *a., and the case of Jackson* v. *Rowland,* 6 *Wendell,* 666. The case in 15 *Wendell,* 547, the counsel said did not apply ; and what was said in 2 *Vent.* 198, they insisted was *obiter*. As to the case of *Wilt* v. *Franklin,* cited on the other side, they contended it was not law, and that even that case essentially differed from this, inasmuch as the assignee there *at once* accepted the trust, and by so doing concluded the assignor. As to the doctrine that the estate *vests* for the benefit of the *cestuis que trust,* where the trustees refused to accept, the counsel for the defendant contend-

ed that it does not apply to the case of a *grant*, nor where the question of *delivery* of the deed is in doubt : but that it applies only to cases where the trusts are fixed by a complete delivery, and irrevocable, as in the cases of the creation of a trust by will, or of an acceptance and subsequent death or inability of the trustees to act.

*By the Court*, NELSON, Ch. J. Nothing is clearer than that the executions attached before the assignment of the goods to the plaintiff took effect. The goods were bound from the *delivery* of the writs to the sheriff, 2 *R. S.* 289, § 13, which was at *seven minutes past ten o'clock A. M.* down to *one o'clock P. M.*, the plaintiff had expressly refused to accept the trust. The mere taking into his hands the instrument and retaining it, amounted to nothing. There must be an acceptance of the trust—a delivery without acceptance, is nugatory. 12 *Johns. R.* 418. There can be [ *285 ] *no presumption of acceptance from the time of the delivery here, as the declarations of the assignee negative the fact.

Indeed, here was an actual levy and custody of the goods before the execution and delivery of the assignment.

There is nothing in the transaction, that should induce us to make favorable intendments in support of the title of the assignee. The whole of it is the obvious contrivance of a failing firm to place their property beyond the reach of impending executions ; and that, too, without any previous communication with, or for aught that appears, knowledge of, their general creditors. It is an enterprize, exclusively of their own.

Judgment affirmed.